[No. D030508. Fourth Dist., Div. One. Nov. 9, 1998.]

In re CARLOS TOMAS GARCIA on Habeas Corpus.

842

**COUNSEL**

Francis J. Bardsley, Public Defender, Steven J. Carroll and Jane Gilbert, Deputy Public Defenders, for Petitioner.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Peter J. Siggins, Assistant Attorney General, Darrell L.

Lepkowsky, Barbara Spiegel, Quisteen S. Shum and Julie L. Garland, Deputy Attorneys General, for Respondent.

## Opinion

**McINTYRE, J.**—In February 1997, while incarcerated at California Medical Facility, Carlos Tomas Garcia requested permission to correspond with Tony Protopappas, an inmate at Richard J. Donovan Correctional Facility (Donovan). Approval from both institutions is required before correspondence is permitted. Officials at California Medical Facility approved Garcia's request. Officials at Donovan denied his request based on a policy which limits correspondence between Donovan inmates and inmates housed at other institutions to immediate family members, inmates having a child in common, and coparties or a witness in pending litigation.

Garcia petitions this court to order the Donovan warden to allow him to correspond with inmate Protopappas, contending (1) the Donovan policy violates the purpose of California Code of Regulations, title 15,[1] section 3130 to encourage correspondence between inmates; (2) the Donovan policy is a regulation of general application, the adoption of which failed to comport with requirements of the Administrative Procedure Act (APA) (Gov. Code, § 11340 et seq.); and (3) previous attempts to similarly limit correspondence between inmates without APA compliance have been disapproved by the Office of Administrative Law (OAL).

Garcia misinterprets section 3130, which encourages correspondence between inmates and persons *outside* correctional facilities, not inter-inmate correspondence. Moreover, the Donovan correspondence policy is a local rule applying solely to Donovan and is not subject to requirements of the APA. For the same reason, the previous OAL determinations which pertained to a rule of general application do not apply. Thus, we deny the petition.

### Discussion

#### *Mootness*

■ Respondent contends the petition is moot because neither Garcia nor inmate Protopappas is currently housed at Donovan. While institutional transfers may have rendered the petition technically moot, we exercise our

---

[1]Further statutory references are to the California Code of Regulations, title 15 unless otherwise specified.

inherent discretion to decide the matter, which is of substantial public importance and has already resulted in another petition pending in this court—*In re Johnson* (D031418). (See *In re William M.* (1970) 3 Cal.3d 16, 23 [89 Cal.Rptr. 33, 473 P.2d 737].)

## REQUIREMENTS OF THE CODE OF REGULATIONS

█ Section 3130 sets forth the California Department of Correction's (Department) policy of encouraging correspondence between inmates and persons *outside* correctional facilities. Section 3139 governs correspondence between inmates. This section requires inmates in separate correctional institutions to obtain the prior approval of the warden of each facility where the inmates are housed before they may correspond. Under section 3131, each warden is to prepare and maintain a plan of operations for the sending and receiving of mail for inmates housed in the facility. Section 3131 further requires correctional staff to promptly inform each new inmate regarding departmental regulations and local procedures governing inmate mail.

Donovan operational plan No. 26, as prescribed by section 3139, states that the warden is responsible for making decisions regarding approval of inmate correspondence between institutions. According to the uncontested declaration of Donovan Warden J. M. Ratelle, approval of such correspondence is contingent upon the other inmate being (1) an immediate family member; (2) a parent of the Donovan inmate's child; or (3) a coplaintiff, codefendant or witness in pending litigation. The need to obtain prior approval for inter-institutional correspondence and the approval criteria are specified in the orientation handbook provided to each inmate upon arrival at Donovan. Thus, regulatory requirements regarding inter-institutional inmate correspondence have been met.

### Application of the APA

The APA prohibits a state agency from issuing or enforcing a regulation unless it was adopted in accordance with the APA. (Gov. Code, § 11340.5, subd. (a).) A regulation is any rule of "general application" or any modification to such a rule that has been adopted by an agency to implement, interpret or make specific the law enforced or administered by the agency or to govern the agency's procedure. (Gov. Code, § 11342, subd. (g).) Department rules and regulations administering prisons are subject to APA requirements. (Pen. Code, § 5058, subd. (a).)

The APA does not define "general application." Courts considering the term in the context of prison administration have found a rule is of "general

application" and the APA applicable where the rule has significantly affected a broad range of prisoners. (See, e.g., *Stoneham* v. *Rushen* (1982) 137 Cal.App.3d 729 [188 Cal.Rptr. 130] [classification system to determine level of custody and place of confinement for all male inmates]; *Faunce* v. *Denton* (1985) 167 Cal.App.3d 191 [213 Cal.Rptr. 122] [provisions regulating the amount and type of personal property prisoners throughout system may possess in their cells].) In 1995, the Legislature amended Penal Code section 5058 to make it clear local rules which apply solely to a particular prison are not subject to the APA. (Pen. Code, § 5058, subd. (c)(1).)

Garcia contends Donovan's policy affects the entire prison population; and thus, it is a rule of general application, not a local rule exempt from APA requirements. We disagree.

The Donovan inter-institutional correspondence policy applies solely to correspondence entering or leaving Donovan. It applies to Donovan inmates in all instances. Inmates housed at other institutions are controlled by that institution's correspondence policies. Inmates housed at other facilities are affected by Donovan rules only if they seek to correspond with Donovan inmates. However, their ability to correspond with any other individual is unaffected.

The local nature of the Donovan policy is evidenced by the wide variety of policies found throughout the state. Garcia's correspondence request was approved by California Medical Facility but denied at Donovan. Folsom State Prison allows correspondence with inmates at other institutions absent a verified safety concern. California State Prison—Los Angeles County allows such correspondence only upon a showing of compelling need.

Wardens at the various institutions have developed individual policies based on the needs of the particular institution. According to the declaration of Chief Deputy Warden T. M. Horning, prison officials at Donovan are particularly concerned about safety and security threats posed by inter-institution correspondence. Garcia contends those concerns cannot justify Donovan's correspondence limitations as they are common to all prisons. Garcia fails to recognize prisons vary greatly in inmate populations, security and other factors. (Cal. Dept. of Corrections, Correctional Facilities (1998) [available at http://www.cdc.state.ca.us/facility/facil.htm (visited Oct. 21, 1998)]; Cal. Dept. of Corrections, CDC Facts (Oct. 1, 1998) [available at http://www.cdc.state.ca.us/factsht.htm (visited Oct. 21, 1998)].)

The Donovan policy is not a rule of general application. It applies solely to Donovan and, under Penal Code section 5058, subdivision (c)(1), is not subject to APA requirements.

*OAL Disapproval of Correspondence Limitations*

In January 1990, the OAL disapproved a proposed Department regulation limiting inter-institutional correspondence for all inmates to family members, coparents and colitigants. The disapproval was based in part on the Department's failure to comply with requirements of the APA. Before submission of the proposed regulation to the OAL, the Department had issued guidelines to all facilities on its implementation. The guidelines were not rescinded upon disapproval of the proposed regulation. In December 1990, the OAL found a rule enforced by the California Men's Colony which was identical to and an implementation of the guidelines to be subject to the APA. Garcia contends there is no distinction between the disapproved limitations on inter-institutional correspondence and the situation presented here.

The Department-proposed regulation was of general application, intended to be applied to inmates throughout the system. The rule issued by the California Men's Colony was identical to those being enforced throughout the system in response to the Department guidelines which had not yet been rescinded. The OAL determined the rule was a "regulation" rather than a local rule, in a situation in which the Department was accomplishing piecemeal what it could not do by the proposed regulation.

In marked contrast, individual institutions now formulate different local policies on inter-institutional correspondence. The Department no longer requires uniform limitations. Moreover, according to Warden Ratelle's undisputed declaration, the Donovan restrictions on correspondence have been in effect since Donovan opened in 1987, two years before the Department regulation was proposed and rejected. The challenged policy is a local rule and is thus unlike the regulation and rule considered by the OAL.

## DISPOSITION

The petition for writ of habeas corpus is denied.

Benke, Acting P. J., and Huffman, J., concurred.

A petition for a rehearing was denied December 2, 1998, and petitioner's application for review by the Supreme Court was denied March 9, 1999.